IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-242 |
| | ) | |
| ZACKARY WOZNICHAK | ) | |

**MEMORANDUM OPINION**

**I.      INTRODUCTION**

Presently before the Court is Defendant Zackary Woznichak's Motion to Dismiss Indictment, wherein he argues that Count Three of the Indictment, charging a violation of 18 U.S.C. § 922(g)(1), should be dismissed because that provision is unconstitutional as applied to him in violation of the Second Amendment under recent authority from the United States Supreme Court and the United States Court of Appeals for the Third Circuit. (Docket Nos. 55 at 4-7; 66 at 2-19). Defendant also argues that § 922(g)(1) is unconstitutional on its face, unconstitutionally vague and violates the Commerce Clause. (Docket Nos. 55 at 7-11; 66 at 19-23). Further, he contends that Count Four of the Indictment, charging a violation of 26 U.S.C. 5861(d), should be dismissed because it violates the Second Amendment. (Docket No. 55 at 11-14). The Government opposes Defendant's Motion. (Docket Nos. 61, 69). After careful consideration of the parties' respective positions, the Court concludes that Defendant's arguments lack merit, thus his Motion will be denied in all respects.[1]

---

1     Given that the parties have thoroughly briefed the issues raised by Defendant's Motion, the Court finds that a hearing and/or oral argument on the Motion is unnecessary. *See* Fed. R. Crim. P. 12(c)(1) (providing that the court "may" schedule a motion hearing).

## II.     BACKGROUND

Defendant is charged in a four-count Indictment as follows: at Count One with possession with intent to distribute a quantity of marijuana and a quantity of MDMA, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 841(b)(1)(D); at Count Two with possession of a short-barreled shotgun and a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(B)(i); at Count Three with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and at Count Four with possession of an unregistered shotgun having a barrel of less than 18 inches, in violation of 26 U.S.C. § 5861(d). (Docket No. 1).

Defendant now moves to dismiss Count Three of the Indictment,[2] challenging the constitutionality of § 922(g)(1) following the Supreme Court's decision in *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S. Ct. 2111 (2022) and the Third Circuit Court of Appeals' decision in *Range v. Attorney Gen. of U.S.*, 69 F.4th 96 (3d Cir. 2023). (*See generally* Docket Nos. 55, 66). In light of these decisions, Defendant contends the Government will be unable to show that § 922(g)(1), as applied to him, is consistent with this Nation's historical tradition of firearm regulation. (Docket Nos. 55 at 6-7; 66 at 3-19). Defendant further argues that § 922(g)(1) is unconstitutional on its face, unconstitutionally vague and violates the Commerce Clause. (Docket Nos. 55 at 7-11; 66 at 19-23). Additionally, Defendant moves to dismiss Count Four of the Indictment, contending that 26 U.S.C. § 5861(d) is unconstitutional under the standard enunciated in *Bruen*. (Docket No. 55 at 11-14).

---

2       Defendant also filed a Motion to Preserve Law Enforcement's Rough Notes and a Motion to Provide Notice of Evidence that the Government Intends to Use Under Federal Rules of Evidence 404(b) and 609, (Docket Nos. 53, 54), which the Court ruled on in an Order dated October 31, 2023. (Docket No. 70). Additionally, Defendant filed a Motion to Suppress Evidence, (Docket No. 57), which will be addressed separately.

The Government advocates that the Court should reject Defendant's as-applied constitutional challenge to § 922(g)(1). (Docket Nos. 61 at 3-13; 69 at 1-8). According to the Government, Defendant's Motion should be denied because he does not contend that he possessed the firearms in question for self-defense, which is the only Second Amendment-protected purpose that the Supreme Court has recognized. (Docket No. 61 at 3). Even if Defendant could overcome that deficiency, the Government maintains that he cannot overcome the facts that he possessed firearms while on state probation, in furtherance of drug trafficking, and after prior drug convictions, thus § 922(g)(1) is constitutional as applied to a person in his circumstances under the historical analysis set forth in *Range*. (*Id.* at 6-13). The Government further contends that Defendant's facial challenge fails because he has not shown that § 922(g)(1) is unconstitutional in all circumstances. (*Id.* at 13-15). Additionally, the Government argues that § 922(g)(1) is not unconstitutionally vague, and it does not violate the Commerce Clause. (*Id.* at 15-17). Finally, the Government submits that 26 U.S.C. § 5861(d)'s prohibition on unregistered short-barreled shotguns does not violate the Second Amendment, either as applied or facially. (*Id.* at 17-20).

In Reply, Defendant reiterates that there is no historical tradition of permanently prohibiting firearm possession by someone like him, who previously was convicted of trafficking controlled substances. (*See* Docket No. 66 at 3-19). Defendant also amplifies his arguments that § 922(g)(1) is both facially unconstitutional and unconstitutionally vague. (*Id.* at 19-23). The Government filed a Sur-reply further advocating that Defendant has failed to establish that § 922(g)(1) is unconstitutional as applied to him. (*See* Docket No. 69). Defendant's Motion is now ripe for disposition.

### III.     LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), an alleged defect in the indictment "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B); *see United States v. Covington*, 395 U.S. 57, 60 (1969) (observing that Rule 12 permits pretrial resolution of a motion to dismiss indictment when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense."). "An indictment is defective if it alleges [a] violation of an unconstitutional statute." *United States v. Ho Ka Yung*, Crim. No. 17–14–LPS, 2018 WL 619585, at *1 (D. Del. Jan. 30, 2018) (quoting *United States v. Dean*, 670 F. Supp. 2d 457, 458 (E.D. Va. 2009) and citing *United States v. Boffa*, 513 F. Supp. 444, 459–64 (D. Del. 1980) (resolving motion to dismiss indictment where defendant alleged statute was unconstitutionally vague, overbroad, and unconstitutional as applied)). As stated, Defendant lodges several constitutional attacks on Counts Three and Four of the Indictment, including that § 922(g)(1) is unconstitutional as applied to him. *See United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (In contrast to a facial attack, an as-applied challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right.") (citation omitted).

Importantly, in analyzing a Rule 12 motion to dismiss, a district court's review is confined to the facts alleged in the indictment, *see United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011), and the court "must accept as true the factual allegations set forth [therein]." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (abrogated on other grounds by *Rehaif v. United States*, 139 S. Ct. 2191 (2019)). The scope of review remains the same where, as here, a defendant lodges

an as-applied challenge to a statute that he is charged with violating.[3]  *See id.* at 601 (in assessing on appeal a defendant's Second Amendment challenge to a charge of aiding and abetting possession of a firearm by a convicted felon, the Third Circuit emphasized that it was "limited to determining whether, based on the allegations in the Indictment—and only the allegations in the Indictment—[defendant's] Second Amendment rights have been violated").  Against this legal standard, the Court considers Defendant's Motion.

IV.   **DEFENDANT'S AS-APPLIED CHALLENGE TO 18 U.S.C. § 922(g)(1)**

Count Three of the Indictment charges that Defendant violated 18 U.S.C. § 922(g)(1), (*see* Docket No. 1 at 3), which makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition."  18 U.S.C. § 922(g)(1).  Defendant argues that Count Three should be dismissed because § 922(g)(1) is unconstitutional as applied to him following *Bruen* and *Range*.  (*See* Docket Nos. 55 at 4-7; 66 at 3-19).  Conversely, the Government maintains that § 922(g)(1) is constitutional as applied to a person in Defendant's circumstances under the historical analysis set forth in those cases.  (*See* Docket Nos. 61 at 6-13; 69 at 1-8).  The applicable decisional law interpreting the Second Amendment compels the Court to concludes that

---

3       In certain circumstances, courts have rejected as premature as-applied challenges raised in a motion to dismiss the indictment which are dependent "on factual assertions about the circumstances surrounding the offense that are interwoven with evidence about whether [the defendant] committed the crime the Indictment has charged." *United States v. Poulin*, 588 F. Supp. 2d 58, 61 (D. Me. 2008) (dismissing without prejudice motion to dismiss indictment raising as-applied First Amendment challenge because motion "relies on facts not alleged in the Indictment and those facts constitutionally require resolution by a jury"); *see also United States v. Pope*, 613 F.3d 1255, 1261 (10th Cir. 2010) (rejecting pre-trial as-applied Second Amendment challenge to firearms charge, explaining that the defendant "contends the statute is unconstitutional only in light of the facts surrounding the commission of the alleged offense, the very facts a court may not consider before trial.") (internal quotation marks and citation omitted); *United States v. Miller*, No. 1:06 CR 364, 2007 WL 188277, at *3 (N.D. Ohio Jan. 22, 2007) (denying motion to dismiss because the as-applied challenge required resolution of evidentiary materials and therefore exceeded the scope of a Rule 12 motion); *United States v. Coronado*, 461 F. Supp. 2d 1209, 1217-18 (S.D. Cal. 2006) (denying as premature as-applied First Amendment challenge brought in a motion to dismiss the indictment).  For reasons expressed below, the Court finds that Defendant's as-applied challenge raised in the pending Motion is capable of resolution by reference to the facts alleged in the Indictment.

the Government is correct.

### A. Applicable Second Amendment[4] Law

To start, in *District of Columbia v. Heller*, 554 U.S. 570, 630, 635 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742, 767-68 (2010), the Supreme Court recognized that the Second and Fourteenth Amendments protect an individual's right to possess a handgun in the home for the "core lawful purpose of self-defense." The Supreme Court stressed, however, that the right is not unlimited. *Heller*, 554 U.S. at 595. To illustrate, "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the [Second Amendment] right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. Accordingly, the Supreme Court instructed that "nothing in [*Heller*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. Later, in *McDonald*, the Supreme Court reiterated that its holding in *Heller* did not cast doubt on such longstanding "prohibitions on the possession of firearms by felons," among other prohibitions. *McDonald*, 561 U.S. at 786.

In *Bruen*, the Supreme Court held that the Second and Fourteenth Amendments protect "an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 142 S. Ct. at 2122. In so ruling, the Court articulated the following history-based framework for determining whether a firearm regulation is constitutional under the Second Amendment:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation

---

4   The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

6

> promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2126. As the Supreme Court explained, this framework "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. When assessing present day firearms regulations, the historical analysis that courts must undertake "will often involve reasoning by analogy." *Id.* at 2132. To that end, "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 2133 (emphasis in original). In summary, although *Bruen* altered the analytical framework for addressing Second Amendment challenges, it did not displace *Heller* or *McDonald*, including *Heller's* admonition that nothing therein "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."[5] *See Heller*, 554 U.S. at 626.

Applying the *Bruen* framework, the Third Circuit Court of Appeals recently determined in a "narrow" decision that § 922(g)(1) was unconstitutional as applied to Bryan Range, who had previously been convicted of making a false statement to obtain food stamps in violation of Pennsylvania law. *Range*, 69 F.4th at 98, 106. In undertaking the historical analysis, the Court of Appeals reiterated that, post-*Bruen*, it is first necessary to decide "whether the text of the Second

---

[5] In concurring and dissenting opinions in *Bruen*, six Supreme Court Justices affirmed as much. *See Bruen*, 142 S. Ct. at 2157 (2022) (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. . . . Nor have we disturbed anything that we said in *Heller* or *McDonald v. Chicago*, 561 U.S. 742 (2010), about restrictions that may be imposed on the possession or carrying of guns."); *see id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons. . . ."); *see id.* at 2189 (Breyer, J., joined by Sotomayor, J., and Kagan, J., dissenting) (stating awareness that *Bruen's* holding has no impact on *Heller's* finding that banning felons from owning firearms is presumptively lawful).

Amendment applies to a person and his proposed conduct." *Id.* at 101 (citing *Bruen*, 142 S. Ct. at 2134-35). If so, the Government bears the burden of proof to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* (quoting *Bruen*, 142 S. Ct. at 2127).

As to the "threshold question" whether Range was one of the "the people" who have Second Amendment rights, the Court of Appeals concluded that he was, thereby rejecting the notion that only "law-abiding, responsible citizens" are counted among "the people" protected by the Second Amendment. *Range*, 69 F.4th at 101, 103. Next, the Court of Appeals determined that § 922(g)(1) regulated Second Amendment conduct because Range's request to possess a rifle to hunt and a shotgun to defend himself at home tracked the constitutional right as defined by *Heller*. *Id.* at 103 (citing *Heller*, 554 U.S. at 582). The Court of Appeals then examined whether the Government met its burden to demonstrate that stripping firearms from one convicted of Range's prior felony is consistent with the Nation's historical tradition of firearm regulation, and concluded that it did not. *Id.* at 103. Because the Government failed to show that "our Republic has a longstanding history and tradition of depriving people ***like Range*** of their firearms, [the Court of Appeals held that] § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." *Id.* at 106 (emphasis added).

Judge Ambro's concurrence in *Range* underscores that the decision is a "narrow one" as the majority expressly stated. *See Range*, 69 F.4th at 106, 109-113 (Ambro, J., concurring). Judge Ambro clarified that the Government's failure to carry its burden in that particular case "does not spell doom for § 922(g)(1)," and it remains "presumptively lawful"[6] "because it fits within our

---

[6] As to the presumptive lawfulness of § 922(g)(1), Judge Ambro reiterated that "three Justices in *Bruen*'s majority opinion reminded us that felon-in-possession laws remain presumptively lawful, and the three dissenting Justices echoed that view," thus "***a sound basis exists for § 922(g)(1)'s constitutional application in a substantial amount of cases***." *Range*, 69 F.4th at 111 (Ambro, J., concurring) (emphasis added).

Nation's history and tradition of disarming those persons who legislatures believed would, if armed, pose a threat to the orderly functioning of society." *Id.* at 109, 110. Unlike those individuals, Range committed a "small-time offense," "[h]e did so with a pen to receive food stamps for his family," and there was nothing to suggest that he "pose[d] a threat to the orderly functioning of society." *Id.* at 112. As Judge Ambro pointed out, Range therefore "stands apart from most other individuals subject to § 922(g)(1) whom we fear much like early Americans feared loyalists or Reconstruction-era citizens feared armed tramps."[7] *Id.*

## B. Section 922(g)(1) is Constitutional As Applied to Defendant

Before undertaking the historical analysis required by *Bruen*, it bears repeating that the Court's review of Defendant's Motion is confined to the facts alleged in the Indictment, *see Bergrin*, 650 F.3d at 268, and the court "must accept as true the factual allegations set forth [therein]." *Huet*, 665 F.3d at 595. Consistent with this standard,[8] Count Three of the Indictment alleges, and the Court accepts as true, the following: that on or about September 3, 2020, Defendant, knowing he previously had been convicted of certain crimes listed in the Indictment, each of which is punishable by a term of imprisonment exceeding one year, knowingly possessed, in and affecting interstate commerce, a 7.62 x 39mm caliber Romanian rifle, a 20-gauge New England Firearms Co. shotgun, a 9mm caliber Beretta pistol, and various types of ammunition, in violation of 18 U.S.C. § 922(g)(1). (Docket No. 1 at 3). As alleged in the Indictment, Defendant was twice previously convicted of possession with intent to deliver a controlled substance in the

---

[7] As discussed below, the Government cites numerous additional historical analogues from the founding and Reconstruction eras, which demonstrate that Defendant is not like Range. *See infra* at 12-13.

[8] In the Court's estimation, this standard precludes consideration of information which is not alleged in the Indictment, including the Government's recitation of the facts and circumstances underlying the offenses alleged in this case, as well as the facts and circumstances of Defendant's prior state drug trafficking convictions, and that he was sentenced to 4 years' probation for those crimes, which he was serving at the time of the conduct underlying the offenses alleged in the Indictment. (*See* Docket No. 61 at 1-2).

Court of Common Pleas of Indiana County, Pennsylvania.  (*Id.*).

Moving on to application of *Bruen*'s historical framework to Defendant's case, the threshold question is whether Defendant is one of "the people" protected by the Second Amendment, despite having prior convictions of crimes punishable by a term of imprisonment exceeding one year.  *See Range*, 69 F.4th at 101.  Given *Range*'s holding that "the people" includes all Americans and not only "law-abiding, responsible citizens," *id.* at 101, 103, the Government agrees that Defendant is one of "the people" protected by the Second Amendment.  (*See* Docket No. 61 at 5-6).

The next question is whether the Second Amendment's plain text applies to Defendant's proposed conduct.  *Bruen*, 142 S. Ct. at 2126.  Defendant contends that it does because the conduct prohibited by § 922(g)(1)  - possession of a firearm – falls squarely within the heartland of the Second Amendment.  (Docket No. 55 at 5-6).  The Government disagrees that the Second Amendment applies to Defendant's conduct because he has neither argued, nor offered evidence, that he possessed the firearms in question for self-defense, which is the only Second Amendment-protected purpose that the Supreme Court has recognized.  (Docket No. 61 at 3).

In *Range*, the Third Circuit Court of Appeals characterized the question of "whether § 922(g)(1) regulates Second Amendment conduct" as "easy," and determined that it does.  *Range*, 69 F.4th at 103.  To be clear, the Court of Appeals explained that "Range's request – to possess a rifle to hunt and a shotgun to defend himself at home – tracks the constitutional right as defined by *Heller*."  *Id.* (citing *Heller*, 554 U.S. at 582).  As a result, the Court of Appeals concluded that "the Second Amendment's plain text covers [Range's] conduct," and "the Constitution presumptively protects that conduct."  *Id.* (quoting *Bruen*, 142 S. Ct. at 2126).  These statements indicate that the Court of Appeals considered the nature of Range's proposed conduct in answering

that "easy" question, which is just what *Bruen* requires.  *See Bruen*, 142 S. Ct. at 2134 ("We therefore turn to whether the plain text of the Second Amendment protects [an individual's] proposed course of conduct—carrying handguns publicly for self-defense.").

Here, the Court is unable to answer the question because, in order to consider the nature of Defendant's proposed conduct, the Court would be required to consider information external to the Indictment, which is beyond the Court's scope of review on the Motion to Dismiss.[9] (*See supra* at 4-5 and n.3).  Nevertheless, in order to resolve Defendant's Motion, the Court need not address whether the Second Amendment covers Defendant's conduct.  This is because, even assuming for the sake of argument that it does, the Government has met its burden to show that § 922(g)(1) as applied to Defendant is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

To reiterate, "[h]istorical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*.' " *Range*, 69 F.4th at 103 (quoting *Bruen*, 142 S. Ct. at 2133) (emphasis in original).  "To be compatible with the Second Amendment, regulations targeting longstanding problems must be 'distinctly similar' to a historical analogue[,] [whereas] 'modern

---

[9] At this step of the analysis, another court observed, "[i]t is not clear that the *Bruen* or *Range* decisions would require an assertion of purpose in the criminal context." *United States v. Harper*, Crim. No. 1:21-CR-0236, 2023 WL 5672311, at *9 (M.D. Pa. Sept. 1, 2023), *appeal docketed*, No. 23-2604 (3d Cir. Sept. 6, 2023).  This observation, as well as the fact that an assertion of purpose would be outside the allegations of an indictment for purposes of analyzing a motion to dismiss as discussed herein, underscore one challenge confronted by district courts in attempting to faithfully apply *Bruen* and *Range*.  Perhaps this challenge exists, in part, because *Bruen* and *Range* were civil actions with different applicable procedural postures and standards of review as compared to the Motion to Dismiss presently before the Court in this criminal case.
  Nevertheless, as stated, this Court finds it unnecessary to answer the question of whether the Second Amendment's plain text covers Defendant's conduct, assumes only for the sake of argument that it does, and finds that the Government has sustained its burden to establish that § 922(g)(1) is constitutional as applied to Defendant in this case.  Conversely, the *Harper* court determined that the defendant's firearm possession, as alleged in the indictment in that case, was conduct covered by the plain text of the Second Amendment, and ultimately held that the Government did not establish that § 922(g)(1) was constitutional as applied to the defendant there.  *Harper*, 2023 WL 5672311at *9, *10-13.  This Court is neither persuaded, nor bound, by *Harper* and notes that the case currently is pending appeal in the Third Circuit Court of Appeals at Case No. 23-2604.

regulations that were unimaginable at the founding' need only be 'relevantly similar' to one." *Id.* (quoting *Bruen*, 142 S. Ct. at 2131, 2132). Given that " '[i]llegal drug trafficking is a largely modern crime' with no direct historical analogue," *United States v. Reichenbach*, No. 4:22-CR-00057, 2023 WL 5916467, at *6 (M.D. Pa. Sept. 11, 2023) (quoting *United States v. Alaniz*, 69 F.4th 1124, 1129 (9th Cir. 2023)), the Court must determine whether the historical analogues identified by the Government and § 922(g)(1) are "relevantly similar." *Bruen*, 142 S. Ct. at 2132. *Bruen* identified two metrics that render historical and modern firearm regulations relevantly similar: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. As the Supreme Court explained, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." *Id.* (internal quotation marks and citations omitted).

In this case, the Government identifies as historical analogues for § 922(g)(1) a series of 17th, 18th and 19th century statutes which disarmed individuals who were deemed to be dangerous, untrustworthy, or a threat to the orderly functioning of society. (*See* Docket No. 61 at 9-11). The historical analogues identified by the Government share a common theme – disarming individuals who lawmakers deemed to be dangerous or disruptive to society and protecting the public from disorder and danger. (*See id.*). The Court finds that the Government's historical analogues which disarmed those who were deemed to "pose a threat to the orderly functioning of society," *Range*, 69 F.4th at 110, are proper historical analogues to § 922(g)(1), and specifically to § 922(g)(1)'s application to Defendant as a felon who previously was convicted of drug trafficking offenses.[10]

---

10 Although the Third Circuit Court of Appeals found that Range "and his individual circumstances" were not sufficiently analogous to "groups [the founding-era governments] distrusted," *Range*, 69 F.4th at 105, the same cannot be said of Defendant, who is not like Range, given the nature of their underlying convictions – Range's making a false statement to obtain food stamps and Defendant's drug trafficking.

Turning to the "how and why" metrics to compare the relevant similarity of historical and modern firearms regulations, the Court assesses whether § 922(g)(1) and the historical regulations identified by the Government impose a comparable burden on Defendant's right of armed self-defense and whether that burden is comparably justified. *Bruen*, 142 S. Ct. at 2133. As to the "how," the Government's referenced historical analogues demonstrate that an individual's right to possess a firearm could be restricted or prohibited if he was deemed to be dangerous or disruptive to society or could not be trusted to obey the law. With regard to the "why," the Government's historical analogues illustrate that the purpose of firearm restrictions or prohibitions was to ensure the orderly functioning of society and to protect the public from disruptions thereto.

The Court is satisfied that the "how and why" of § 922(g)(1) are relevantly similar to the historical analogues identified by the Government. First, the "how" of § 922(g)(1) prohibits individuals, like Defendant, who have been convicted of felony drug trafficking offenses from possessing firearms because such individuals have demonstrated that they cannot be trusted to obey the law, and they pose a threat to the orderly functioning of society. Section 922(g)(1)'s "why," like the referenced historical analogues, is to protect the public from violence and disorder, given that the danger drug trafficking poses to society is only exacerbated when drug dealers possess firearms. *See Smith v. United States*, 508 U.S. 223, 240 (1993) (observing that "drugs and guns are a dangerous combination"). For these reasons, the Court concludes that the historical analogues identified by the Government are relevantly similar to § 922(g)(1), and demonstrate that § 922(g)(1), as applied to an individual like Defendant who has been convicted of felony drug trafficking offenses, "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. Accordingly, § 922(g)(1), as applied to Defendant, falls outside the protection of the Second Amendment. *See, e.g., United States v. Williams*, Crim. No. 22-228,

2023 WL 6810569, at *6 (W.D. Pa. Oct. 16, 2023) (Hardy, J.) (finding § 922(g)(1) constitutional as-applied to a defendant who previously was convicted of felony drug trafficking offense); *United States v. Wise,* Crim. No. 21-511, 2023 WL 6260038, at *7 (W.D. Pa. Sept. 26, 2023) (Hardy, J.) (same)*; United States v. Minter*, 3:22-CR-135, 2023 WL 6051265, at *9 (M.D. Pa. Sept. 15, 2023) (same); *United States v. Blackshear,* Crim. No. 23-159, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023) (same); *Reichenbach*, 2023 WL 5916467, at *6 (same).

In summary, accepting as true the factual allegations set forth in Count Three of the Indictment, the Court concludes that § 922(g)(1) is constitutional as applied to Defendant. Although history does not support disarming "people like Range," a person who previously made a false statement to obtain food stamps, *Range*, 69 F.4th at 106, the Government has sustained its burden to show that it does support disarming Defendant, who has prior drug trafficking convictions, as alleged in the Indictment. Convicted drug traffickers would "threaten the orderly functioning of society if they were armed." *Id.* at 112 (Ambro, J., concurring) (observing that "[m]ost felons have broken laws deemed to underpin society's orderly functioning, be their crimes violent or not"). Consequently, barring the possession of firearms by individuals like Defendant is "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127.

## V.    DEFENDANT'S OTHER CHALLENGES TO 18 U.S.C. § 922(g)(1)

Defendant also argues that § 922(g)(1) is unconstitutional on its face, it is unconstitutionally vague, and it violates the Commerce Clause. (Docket Nos. 55 at 7-11; 66 at 19-23). These challenges to § 922(g)(1) provide no basis to dismiss Count Three of the Indictment.

### A.    Section 922(g)(1) Is Not Unconstitutional On Its Face

First, Defendant's facial challenge, (*see* Docket Nos. 55 at 7-8; 66 at 19-21), is unfounded.

"A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *Marcavage*, 609 F.3d at 273 (citation omitted). "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.' " *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Therefore, to prevail on his facial challenge to § 922(g)(1), Defendant must show that it "is unconstitutional in all of its applications." *Id.* (citation omitted). Defendant has failed to sustain this burden because § 922(g)(1) is not unconstitutional as applied in his case for reasons discussed above. Consequently, Defendant's facial challenge to § 922(g)(1) fails because he has not demonstrated that it violates the Second Amendment in all of its applications. *See Blackshear*, 2023 WL 5985284, at *3 (rejecting facial challenge to § 922(g)(1) where the defendant "[could not] show that § 922(g)(1) is unconstitutional as applied to his case, let alone in all circumstances"); *United States v. Ames*, Crim. No. 23-178, 2023 WL 5538073, at *3 (E.D. Pa. Aug. 28, 2023) (same).

### B. Section 922(g)(1) Is Not Unconstitutionally Vague

Defendant's vagueness challenge, (*see* Docket Nos. 55 at 8-10; 66 at 21-23), fares no better. A criminal statute is unconstitutionally vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citations omitted). "In the criminal context, the Supreme Court has held that since vagueness attacks are based on lack of notice, they may be overcome in any specific case where reasonable persons would know their conduct puts [them] at risk of punishment under the statute." *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992) (internal quotation marks and citation omitted). "Thus, to be constitutional, criminal statutes need only give 'fair warning' that certain

conduct is prohibited." *Id.* (quoting *Colten v. Kentucky*, 407 U.S. 104, 110 (1972)). In addition, "the Supreme Court has held that scienter requirements in criminal statutes 'alleviate vagueness concerns,' because a mens rea element makes it less likely that a defendant will be convicted for an action that he or she committed by mistake." *United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009) (citing *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007)).

Section 922(g)(1) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). In this Court's estimation, the plain text of § 922(g)(1) clearly and unambiguously provides notice that those persons convicted of a felony or a felony equivalent are prohibited from possessing a firearm or ammunition. Moreover, § 922(g) requires proof that a defendant "knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. This knowledge requirement serves to further alleviate any vagueness concerns. *See Fullmer*, 584 F.3d at 152. For these reasons, the Court concludes that § 922(g)(1) does not fail to provide "fair notice of what is prohibited," and it is not unconstitutionally vague. *See Blackshear*, 2023 WL 5985284, at *3; *Ames*, 2023 WL 5538073, at *3 (both concluding same).

### C. Section 922(g)(1) Does Not Violate the Commerce Clause

Finally, to preserve the argument, Defendant asserts that § 922(g)(1) is inconsistent with the original public meaning of the Constitution's Commerce Clause. (Docket No. 55 at 10-11). Given that Defendant's Commerce Clause argument is foreclosed by existing precedent, *see United States v. Singletary*, 268 F.3d 196, 204-05 (3d Cir. 2001) (rejecting argument that Congress exceeded authority given by Commerce Clause when enacting § 922(g)(1)); *United States v. Penn*,

870 F.3d 164, 165 n.2 (3d Cir. 2017) (reaffirming *Singletary*)), dismissal of Count Three of the Indictment is not warranted on this basis.

## VI. DEFENDANT'S CHALLENGE TO 26 U.S.C. § 5861(d)

Defendant maintains that Count Four of the Indictment, charging a violation of 26 U.S.C. § 5861(d), should be dismissed because it violates the Second Amendment under *Bruen*. (Docket No. 55 at 11-14). The Court disagrees.

Section 5861(d) makes it unlawful for an individual "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). Firearms that must be registered include "a shotgun having a barrel or barrels of less than 18 inches in length." 26 U.S.C. § 5845(a)(1). Count Four of the Indictment charges that Defendant possessed an unregistered "shotgun having a barrel of less than 18 inches in length." (Docket No. 1 at 4).

Over 80 years ago, the Supreme Court held that the Second Amendment does not protect short-barreled shotguns:

> In the absence of any evidence tending to show that possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument.

*United States v. Miller*, 307 U.S. 174, 178 (1939). More recently, in *Heller*, the Supreme Court reaffirmed that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the historical understanding of the scope of the right." *Heller*, 554 U.S. at 625. Consequently, "dangerous and unusual weapons," such as the unregistered short-barreled shotgun charged in Count Four of the Indictment, do not fall within the ambit of the Second Amendment. *Id.* at 625,

627.

As discussed above, *Bruen* did not displace *Heller*. *See supra* at 7. Rather, *Bruen* reiterated *Heller's* determination that there is a "historical tradition of prohibiting the carrying of dangerous and unusual weapons." *Bruen*, 142 S.Ct. at 2128 (quoting *Heller*, 554 U.S. at 627) (internal quotations omitted). Bound by this Supreme Court precedent, this Court agrees with others which have held that "regulating the receipt or possession of 'dangerous and unusual firearms' like short-barreled [shotguns] does not fall within the Second Amendment." *United States v. Rush*, No. 22-cr-40008-JPG, 2023 WL 403774, at *3 (S.D. Ill. Jan. 25, 2023); *see also United States v. Wuchter*, No. 23-CR-2024-CJW-MAR, 2023 WL 4999862, at *5 (N.D. Iowa Aug. 4, 2023) ("[T]he Supreme Court's precedent controls and explicitly directs that the regulations governing the possession of short-barreled shotguns do not regulate conduct protected by the Second Amendment."); *United States v. Sredl*, No. 3:22-CR-71 RLM-MGG, 2023 WL 3597715, at *3 (N.D. Ind. May 23, 2023) (observing that "weapons regulated under § 5861 are outside the Second Amendment's scope"). Given that § 5861(d) does not infringe on conduct protected by the Second Amendment, dismissal of Count Four of the Indictment is not warranted.

## VII. CONCLUSION

The Court concludes that 18 U.S.C. § 922(g)(1) is constitutional both facially and as applied to Defendant, it is not unconstitutionally vague, and it does not violate the Commerce Clause. The Court further concludes that 26 U.S.C. § 5861(d) does not violate the Second Amendment. Consequently, Defendant's Motion to Dismiss Indictment, (Docket No. 55), wherein he moves to dismiss Counts Three and Four of the Indictment, is DENIED. An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date: November 7, 2023
cc/ecf: All counsel of record