IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 21-242 |
| ZACKARY WOZNICHAK, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I.   BACKGROUND**

Defendant Zackary Woznichak is charged in a four-count Indictment with possession with intent to distribute a quantity of marijuana and a quantity of MDMA, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 841(b)(1)(D); possession of a short-barreled shotgun and a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(B)(i); possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and possession of an unregistered shotgun having a barrel of less than 18 inches, in violation of 26 U.S.C. § 5861(d).  (Docket No. 1).

Presently before the Court is Defendant's Motion to Suppress Evidence,[1] wherein he moves to suppress controlled substances, three firearms and ammunition that were seized on September 3, 2020, following the search of his residence in McKees Rocks, Pennsylvania (the

---

1   Defendant also filed a Motion to Preserve Law Enforcement's Rough Notes and a Motion to Provide Notice of Evidence that the Government Intends to Use Under Federal Rules of Evidence 404(b) and 609, (Docket Nos. 53, 54), which the Court ruled on in an Order dated October 31, 2023.  (Docket No. 70).  Additionally, Defendant filed a Motion to Dismiss Indictment, (Docket No. 55), wherein he moved to dismiss Counts Three and Four of the Indictment, which the Court denied in a Memorandum Opinion and Order on November 7, 2023.  (Docket Nos. 71, 72).

1

"Residence") pursuant to a search warrant issued by Judge Jill Rangos of the Allegheny County Court of Common Pleas. (Docket No. 57). The Government filed a Response opposing Defendant's Motion, and he subsequently filed a Reply in further support of his suppression arguments. (Docket Nos. 63, 67). After careful consideration of the parties' submissions, Defendant's Motion will be denied.

## II.   ANALYSIS

Defendant argues that all evidence seized following a search of the Residence should be suppressed because the warrant was not supported by probable cause. (Docket Nos. 57 at 3-11; 67 at 1-3). According to Defendant, probable cause was lacking because the affidavit in support of the warrant fails to establish the confidential informant's basis of knowledge, reliability and veracity, and there is insufficient information concerning the anonymous tipsters. (Docket Nos. 57 at 6-8; 67 at 2-3). Defendant also maintains that drug-related evidence obtained from two trash pulls was insufficient to establish probable cause, in part because evidence recovered in the first trash pull was stale. (Docket No. 57 at 8-11). Further, Defendant contends that the good faith exception does not save the warrant because it was so lacking in indicia of probable cause that any reliance upon it was unreasonable. (Docket Nos. 57 at 12; 67 at 3-4).

The Government responds that the affidavit established ample probable cause for issuance of the search warrant for the Residence because the information from the confidential informant was corroborated by the observations of anonymous concerned citizens, as well as drug evidence seized during two trash pulls, which suggested that evidence of criminal activity would be found in the Residence. (Docket No. 63 at 4-6). The Government additionally contends that the affidavit contained sufficient information to justify the law enforcement officers' reliance on the search

warrant, thus the good faith exception applies.  (*Id.* at 7-8).  For these reasons, the Government submits that suppression is not warranted.  The Court agrees.

### A. The Affidavit Established Probable Cause for Issuance of the Warrant

Whether probable cause exists is to be determined by a practical and common-sense approach.  *See Illinois v. Gates*, 462 U.S. 213 (1983).  To that end, the probable cause inquiry entails "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the magistrate], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id.* at 238.  A reviewing court is not to conduct a "de novo probable-cause determination" but is to decide merely "whether the evidence viewed as a whole provided a 'substantial basis' for the Magistrate's finding of probable cause."  *Massachusetts v. Upton*, 466 U.S. 727, 732-33 (1984); *see also Gates*, 462 U.S. at 238-39 ("[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed.") (internal quotation marks and citation omitted).  Thus, a warrant is to be upheld so long as there is a "substantial basis" for a "fair probability" that specified evidence will be found in a particular place.  *Upton*, 466 U.S. at 733; *see also United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993) (A warrant is to be upheld on review "as long as there is a substantial basis for a fair probability that evidence will be found.").

In making this determination, "[a] magistrate's determination of probable cause should be paid great deference by reviewing courts."  *Gates*, 462 U.S. at 236 (internal quotation marks and citation omitted).  However, the deference given to a magistrate's issuance of a warrant "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusion."  *United States*

3

*v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (citation omitted). Still, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993) (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

In analyzing whether probable cause exists, this Court must "confine [its] review to the facts that were before the magistrate judge, *i.e.*, the affidavit, and [must] not consider information from other portions of the record." *Jones*, 994 F.2d at 1055. Stated otherwise, this Court is restricted to reviewing only the information contained in the "four corners" of the affidavit before the magistrate.[2] *United States v. Whitner*, 219 F.3d 289, 295-96 (3d Cir. 2000). The affidavit supporting a search warrant application "must be read in its entirety and in a common sense and nontechnical manner." *United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997). It need not contain direct evidence linking the place to be searched to the crime. *Id.* "Instead, probable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property." *Jones*, 994 F.2d at 1056 (internal quotation marks and citation omitted). Furthermore, " 'probable cause is a fluid concept' that turns on 'the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules.' " *Miknevich*, 638 F.3d at 182 (quoting *United States v. Shields*, 458 F.3d 269, 277 (3d Cir. 2006)). Proof beyond a reasonable doubt is not required. *Id.* (citing *Gates*, 462 U.S. at 235).

Against these legal principles, the Court turns to review of the affidavit in question, which was prepared by Officer Nicolas Dimichele of the Stowe Township Police Department

---

2   The parties agree that an evidentiary hearing is not required given that this Court's review is confined to the "four corners" of the affidavit that was before Judge Rangos. (*See* Docket Nos. 63 at 6-7; 67 at 1).

(hereinafter, the "Affidavit"). (*See* Docket No. 57-2). Initially, Officer Dimichele recounted his employment and experience as a police officer, which includes his assignment as a task force member of the Pennsylvania Office of Attorney General, Bureau of Narcotics Identification and Control. (*Id.* at 2). As relevant here, Officer Dimichele has participated in long and short-term narcotics investigations, engaged in undercover operations, conducted surveillance, and conducted controlled purchases utilizing confidential sources. (*Id.*). Officer Dimichele averred that the Affidavit contained information based on his personal knowledge or information provided directly to him and corroborated by witnesses and other law enforcement officers involved in the investigation. (*Id.*).

The Affidavit then outlines the facts related to probable cause. In connection with an investigation into marijuana and cocaine trafficking in Allegheny County, Officer Dimichele became aware that Defendant was distributing marijuana from his Residence in McKees Rocks. (Docket No. 57-2, ¶ 1). Officer Dimichele averred that a confidential informant along with "many anonymous, concerned citizen complaints made by telephone" provided detailed information that Defendant and another individual were distributing drugs to numerous unfamiliar people, who arrived in vehicles and entered the Residence carrying large bags. (*Id.*, ¶ 2). Those people sometimes left the Residence with the bags, and other times they did not, but they only stayed for a short period of time. (*Id.*).

Officer Dimichele next averred that he and another Task Force officer conducted a trash pull at Defendant's Residence on August 3, 2020. (Docket No. 57-2, ¶ 5). The officers recovered four discarded trash bags behind the Residence, which had been left for pickup. (*Id.*). Those trash bags contained 21 large, vacuum-sealed freezer bags with marijuana residue. (*Id.*). Mailing labels

with the names of three individuals from the City of Pittsburgh were attached to the vacuum-sealed bags. (*Id.*). The officers also recovered indicia for Defendant. (*Id.*).

Officer Dimichele further averred that he and other Task Force officers conducted another trash pull at Defendant's Residence within 48 hours of submitting the Affidavit on September 1, 2020. (Docket No. 57-2, ¶ 6). On that occasion, the officers recovered four discarded trash bags behind the Residence, which had been left for pickup. (*Id.*). The trash bags contained numerous bags with cocaine residue and numerous gallon sized Ziploc bags with remnants of marijuana, including seeds, leaves and stems. (*Id.*). Once again, the officers recovered indicia for Defendant. (*Id.*).

Based on the foregoing, Officer Dimichele averred that probable cause existed that evidence of marijuana and cocaine trafficking were in the Residence. (Docket No. 57-2 at 3). After considering the Affidavit, Judge Rangos issued a search warrant for the Residence. (*See id.* at 1). Upon review, this Court finds that the information contained in the "four corners" of the Affidavit was sufficient for Judge Rangos to have determined that there was a substantial basis for a fair probability that evidence of controlled substance trafficking would be found in the Residence.

Defendant disputes that the Affidavit established probable cause for issuance of the search warrant. According to Defendant, the Affidavit provides little information about the anonymous, concerned citizen tipsters, it contains no information to establish the confidential informant's reliability or basis of knowledge, and none of the information those sources provided was corroborated. (Docket No. 57 at 5-8). The Government concedes that the reliability of the confidential informant was not established, and that other information was provided by anonymous

6

tipsters, but nonetheless submits that the information is not without value. (Docket No. 63 at 6). The Government is correct. "While [such information] would certainly not be enough by [itself] to establish probable cause, [it is] nevertheless some evidence that drugs were being sold from [the Residence]." *United States v. Miller*, 134 F. App'x 531, 533 (3d Cir. 2005).

In a situation such as this where "an affidavit omits details about a source's identity that would aid a court's reliability analysis, affiants should 'compensate[ ]' with more corroborating information obtained 'through independent police work.' " *United States v. Ramos*, Crim. No. 1:22-CR-42, 2023 WL 3480899, at *2 (M.D. Pa. May 16, 2023) (citing *Alabama v. White*, 496 U.S. 325, 330 (1990); *United States v. Stearn*, 597 F.3d 540, 555 (3d Cir. 2010)). As detailed in the Affidavit, the investigation in this case included such other independent police work. Law enforcement conducted trash pulls at the Residence on August 3, 2020, and again within 48 hours of applying for the warrant on September 1, 2020. (Docket No. 57-2, ¶¶ 5, 6). Defendant acknowledges that trash pulls are a valid investigatory technique, (Docket No. 57 at 10), but he argues that the trash pull evidence from August 3rd was stale, and the evidence was otherwise insufficient to establish probable cause. (*Id.* at 8-11). The Court disagrees.

Although the Third Circuit Court of Appeals has not addressed the value of trash-pull evidence in a precedential opinion, persuasive authority from other Circuit Courts of Appeals suggests that "trash-pull evidence is generally sufficient when proffered *in combination with* other facts, such as informant tips, police surveillance, or a defendant's prior convictions," whereas "trash-pull evidence standing *alone* may or may not support probable cause depending on the type and quantity of drugs at issue as well as the number of trash pulls." *United States v. Ledee*, Crim. No. 1:21-CR-72, 2022 WL 2231823, at *4 (M.D. Pa. June 21, 2022) (citing decisions from other

7

Circuit Courts of Appeals that have so held). In non-precedential decisions, our Court of Appeals has upheld probable cause findings based, in part, on trash-pull evidence. *See Miller*, 134 F. App'x at 533-34 (finding probable cause existed based on neighbors' complaints of suspected drug activity, the defendant's previous drug-related arrest and evidence from a single trash pull containing evidence of controlled substances and indicia of residency); *United States v. Harris*, 118 F. App'x 592, 593-94 (3d Cir. 2004) (finding probable cause existed based on two trash pulls which revealed drug-related evidence, along with surveillance of residence and the defendant's drug arrest history). Additionally, district courts within the Third Circuit have found that search warrants were supported by probable cause in similar situations. *See, e.g., Ledee*, 2022 WL 2231823, at *4-5 (information from confidential informants and two trash pulls uncovering evidence of drug trafficking established probable cause); *United States v. Jackson*, Crim. No. 18-217, 2019 WL 1116913, at *2-3 (W.D. Pa. Mar. 11, 2019) (three trash pulls revealing evidence of drug dealing, indicia for the defendant, and his prior drug related charges established probable cause); *but cf., United States v. Ray*, Crim. No. 1:19-CR-316, 2020 WL 6544840, at *5 (M.D. Pa. Nov. 6, 2020) (affidavit supported exclusively by evidence obtained from single trash pull did not establish probable cause for issuance of warrant to search residence, but suppression was unwarranted because good faith exception applied).

      Here, the Court finds that the trash-pull evidence described in the Affidavit, in conjunction with other information set forth therein, was sufficient to establish probable cause. To repeat, the Affidavit describes two trash pulls conducted behind Defendant's Residence on trash bags left for pickup, which contained drug-related evidence. As a result of the trash pull on August 3, 2020, officers recovered 21 large, vacuum-sealed freezer bags containing marijuana residue, along with

8

indicia for Defendant.  (Docket No. 57-2, ¶ 5).  In addition, in the second trash pull conducted within 48 hours of the warrant application, officers recovered numerous bags containing cocaine residue and numerous gallon sized Ziploc style bags containing marijuana remnants, including seeds, leaves and stems, as well as indicia for Defendant.  (*Id.*, ¶ 6).  As the Government correctly points out, the quantity of drug evidence obtained from the trash pulls was indicative of ongoing drug activity, rather than personal use, which suggested a fair probability that additional controlled substances were in the Residence.  (Docket No. 63 at 5-6).  Moreover, the trash-pull evidence corroborated information from a confidential informant and anonymous, concerned citizens regarding suspicious vehicle and foot traffic at the Residence that was consistent with drug trafficking activity.  (Docket No. 57-2, ¶ 2) (describing people arriving and entering Residence with large bags, staying only a short period of time, and then sometimes leaving with bags and sometimes not).  Taken together, the information in the Affidavit provided a substantial basis upon which Judge Rangos could find probable cause to believe evidence of drug trafficking would be found in the Residence.  *See United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) ("[D]irect evidence linking the residence to criminal activity is not required to establish probable cause. . . . Instead, probable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested.").

The probable cause determination is not undermined by Defendant's contention that evidence obtained in the August 3rd trash pull was stale.  (*See* Docket No. 57 at 11).  Defendant is correct that probable cause can evaporate if the information in an affidavit is outdated.  *See United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002).  Consequently, the "[a]ge of the information supporting a warrant application is a factor in determining probable cause." *United*

9

*States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993). "If too old, the information is stale, and probable cause may no longer exist." *Id.* However, age alone does not determine whether information is stale. *Id*. "The likelihood that the evidence sought is still in place depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched." *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983). Importantly, "[t]he passage of time 'loses significance' when the evidence sought relates to protracted or ongoing criminality." *United States v. Henley*, 941 F.3d 646, 653 (3d Cir. 2019) (citation omitted). Furthermore, stale information "can be refreshed with newer information that relates back to the subject of the older information." *United States v. Cintron*, 243 F. App'x 676, 679 (3d Cir. 2007) (citing *Tehfe*, 772 F.2d at 1120).

Viewed in context, evidence obtained in the August 3rd trash pull was not stale. First, there was only a one-month gap between the August 3rd trash pull and the second trash pull which occurred within 48 hours of the warrant application on September 1, 2020. *See, e.g., United States v. Ritter*, 416 F.3d 256, 262-63 (3d Cir. 2005) (finding that aerial observation and seizure of marijuana plants at a property and two anonymous tips over seven months later reporting marijuana growing there established probable cause for search warrant despite time between aerial observation and tips); *United States v. Calloway*, Crim. No. 2:20-80-3, 2022 WL 897047, at *7 (W.D. Pa. Mar. 28, 2022) (determining that information set forth in affidavit was not stale where warrant was issued two months after the first controlled purchase and one month after the second controlled purchase). Even assuming evidence from the August 3rd trash pull could be considered stale, the second trash pull refreshed evidence derived from the earlier one because it related back to the same subject, that is, the occurrence of drug trafficking at the Residence. *See Cintron*, 243

F. App'x at 679.  Furthermore, "[w]hile one search turning up marijuana in the trash might be a fluke, two indicate a trend."  *United States v. Leonard*, 884 F.3d 730, 734 (7th Cir. 2018).  As such, the drug-related evidence obtained from the two trash pulls that occurred in this case is indicative of ongoing criminal activity, thus making the passage of time less significant.  *See Henley*, 941 F.3d at 653; *Cintron*, 243 F. App'x at 679 ("[A]n activity such as drug trafficking is of a continuous and protracted nature and consequently the passage of time diminishes the significance of staleness in such cases.").  Under these circumstances, the Court concludes that evidence obtained in the August 3rd trash pull was not stale when Officer Dimichele submitted the Affidavit in support of the search warrant on September 1, 2020.

In sum, under the totality of the circumstances, the Court finds that the information contained in the Affidavit established probable cause for issuance of the warrant to search the Residence.

      **B.  Even if Probable Cause Was Lacking, the Good Faith Exception Applies to the Warrant**

Defendant also argues that the good faith exception to the exclusionary rule does not save the warrant.  (Docket Nos. 57 at 12; 67 at 3-4).  The Court disagrees.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court established the good faith exception to the exclusionary rule and held that evidence should not be suppressed if it was obtained in objectively reasonable reliance on a subsequently invalidated search warrant.  *Id.* at 922.  "[T]he purpose of the exclusionary rule - to deter police misconduct - would not be furthered by suppressing evidence obtained during a search 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.' "  *United States v. Tracey*, 597 F.3d 140, 150 (3d Cir. 2010) (quoting *Leon*, 468 U.S. at 919-20).  While

11

*Leon* affirmed that a warrant issued by a magistrate normally suffices to establish that an officer has acted in good faith in conducting the search, it emphasized that "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." *Leon*, 468 U.S. at 922.

The test for whether the good faith exception applies is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922, n. 23. There are four situations in which an officer's reliance on a warrant would not be reasonable and would not trigger the good faith exception: (1) when the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) when the magistrate abandoned his judicial role and failed to perform his neutral and detached function; (3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized. *Id.* at 923; *see also Tracey*, 597 F.3d at 151. These circumstances "involve conduct that is 'deliberate, reckless, or grossly negligent.'" *Tracey,* 597 F.3d at 151 (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)).

Here, Defendant claims the third situation is at issue, arguing that the search warrant for the Residence was based on an Affidavit so lacking in indicia of probable cause that it was entirely unreasonable for law enforcement to rely on it in conducting the search. (Docket Nos. 57 at 12; 67 at 3-4). This argument is unavailing. As discussed, the information contained in the Affidavit was sufficient for Judge Rangos to have found that there was a substantial basis for a fair probability that evidence of drug trafficking would be found in the Residence. To reiterate, the Affidavit described Officer Dimichele's training and experience, the active investigation of

marijuana and cocaine trafficking in Allegheny County, which led to Defendant, and the drug-related evidence twice found in the trash behind Defendant's Residence, as well as indicia for him. (Docket No. 57-2, ¶¶ 1, 4, 5, 6). The Affidavit further specified that a confidential informant and anonymous, concerned citizens provided information about foot and vehicle traffic at the Residence which was indicative of drug trafficking. (*Id.*, ¶ 2). Given this information, the Affidavit in support of the search warrant for the Residence contained the necessary indicia of probable cause and a neutral and detached judicial officer issued the search warrant. Under these circumstances, a reasonably well-trained police officer could have believed that the warrant and subsequent search were lawful.[3]

In summary, even if the Court were to conclude that the warrant was not supported by probable cause, the good faith exception would apply to defeat the present suppression motion. The record in this case simply does not support a finding that one of the four limited circumstances which permit the avoidance of the good faith exception apply here. *See e.g., Tracey*, 597 F.3d at 151. There is also no evidence of conduct by law enforcement officers that was deliberate,

---

3   As a sister court observed in a trash-pull case where the good faith exception applied:

> This is especially true given the paucity of binding precedent concerning trash pulls. Officers acting in good faith must have "a reasonable knowledge of what the law prohibits." *Stearn*, 597 F.3d at 561-62 (quoting *United States v. Zimmerman*, 277 F.3d 426, 438 (3d Cir. 2002)). But the limited case law from our court of appeals offers only guideposts as to the sufficiency of probable cause affidavits based on trash-pull evidence. Therefore, even an exceptionally well-informed officer could have reasonably believed that the affidavit was legally sufficient. In light of this jurisprudential morass, we find that [the officer] credibly and reasonably believed that he had probable cause and a valid warrant to search [the defendant's] home. *See Hodge*, 246 F.3d at 309 (justifying officer's reliance on warrant given the "unsettled jurisprudence governing cases of this type"); *see also Pavulak*, 700 F.3d at 664 (justifying officer's reliance given unsettled law in circuit at the time of affidavit's filing and competing out-of-circuit views).

*Ray*, 2020 WL 6544840, at *6 (finding that good faith exception applied to save warrant that was determined to be lacking in probable cause because it had been supported by an affidavit that relied exclusively on evidence obtained from single trash pull).

reckless, or grossly negligent. *See id.* Consequently, suppression is not warranted in this case.

### III. CONCLUSION

For the reasons discussed herein, Defendant's Motion to Suppress Evidence, (Docket No. 57), is DENIED.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date: November 15, 2023


cc/ecf: All counsel of record